UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE

**DARRICK SCOTT SEXTON**  CASE NO. 24-70160
**KIMBERLY R SEXTON**

**DEBTORS**

## MEMORANDUM OPINION AND ORDER

The Debtors seek confirmation of their amended chapter 13 plan [ECF No. 135] and Vanderbilt Mortgage and Finance Inc. objects [ECF Nos. 115, 128]. Vanderbilt filed a proof of claim for $41,199.38 secured by real estate located at 985 Elks Ford Road, Hazard, Kentucky (the "Real Property"), and a 2009 Clayton mobile home (the "Mobile Home"). [Proof of Claim No. 12-1.] Vanderbilt subsequently agreed that it holds an avoidable security interest in the Mobile Home, and its lien only attaches to the Real Property. [ECF Nos. 115, 128.]

The Debtors originally scheduled the value of the Real Property and Mobile Home as $44,500.00. [ECF No. 1.] The Debtors subsequently amended the schedules several times to separate the real and personal property and ultimately proposed a value of $15,000.00 for the Mobile Home and $1,750.00 for the Real Property. [ECF No. 137.] The amended plan crams down Vanderbilt's secured claim to $1,750, the proposed value of the Real Property. [ECF No. 135.]

Vanderbilt objects to the proposed treatment alleging the value assigned to the Real Property is too low. [ECF Nos. 115, 128.] Vanderbilt also argues the plan does not satisfy the liquidation test under 11 U.S.C. § 1325(a)(4) because the Debtors' offer to pay $15,000.00 into the plan for the value of the Mobile Home is insufficient. [*Id.*]

A valuation hearing was held on August 19, 2025. [ECF Nos. 131, 145, 152-155.] The parties submitted the appraisals and direct testimony of their appraisers prior to the hearing. [ECF Nos. 138, 139.] The Debtors also submitted their direct testimony by affidavit with additional exhibits attached. [ECF Nos. 140, 141.] These affidavits and attached exhibits are deemed admitted without objection.

Supplementary exhibits were tendered at the hearing, and the parties were reminded to file the exhibits in the record. [ECF Nos. 152-155.] Alas, they did not, so the supplementary exhibits are not considered (and would not have helped the decision anyway). The testimony elicited from these exhibits was not subject to objection and is accepted as part of the record.

All witnesses were subject to cross-examination, and the matter was submitted. [*Id*.]

**I.      The Debtors Bear the Burden of Proof.**

The Debtors have the burden of proof by a preponderance of the evidence to satisfy all plan requirements under § 1325. *In re Caudill*, Case No. 18-701012, 2018 WL 3601834, at *1 (Bankr. E.D. Ky. July 25, 2018); *In re Neace*, Case No. 16-60861, 2017 WL 75747, at *1 (Bankr. E.D. Ky. Jan. 6, 2017). The Debtors seek to cram down Vanderbilt's claim to the secured value of the Real Property and must prove that their proposed valuation is fair. 11 U.S.C. §§ 1322(b)(2); 506(a); 1325(a)(5). They also must satisfy the liquidation test. 11 U.S.C. § 1325(a)(4).

The testimony of the Debtors' appraiser was called into question on cross-examination. The cross-examination of Vanderbilt's appraiser also cast doubt on the creditor's proof. Regardless, there is sufficient evidence to determine that the total value of the Real Property is $10,000.00 and the value of the Mobile Home is $18,000.00.

Further, the Debtors have satisfied their burden to show that Kimberly Sexton shares ownership of the Real Property with her brother, so the Debtors' interest in the Real Property for purposes of confirmation is half its total value, or $5,000.00.

## II. The Entire Record Allows the Court to Reasonably Determine the Value of the Property.

The Debtors' appraiser Tony Little testified in his affidavit that the value of the Mobile Home is $16,000.00 and the value of the Real Property is $7,500.00. [ECF No. 139.] There are problems with Little's testimony.

For example, Little testified a home that is 41 years old and partially gutted is comparable to the Debtors' property merely because it is in the same area, and because, in his opinion, "age is just a number." [ECF No. 152 at 53:40-54:21.] Age is not just a number when estimating the value of physical property. It is highly relevant.

Little also testified that "fair" and "average" condition classifications are "pretty close or the same" to him and that he had "no real reason" for distinguishing between the two. [*Id.* at 47:21-47:38.] But average in this context means property is in better than "fair" condition. This would affect the value of the Real Property and the comparison to other fair or average properties. Little averred that these differences in condition do "not necessarily" impact how he evaluates properties, but it is difficult to understand why they would not. [*Id.* at 47:39-47:55.]

The testimony of Vanderbilt's appraiser Coby Wade Mosley had its own problems. Mosley testified that the Mobile Home is worth $67,847.00 and the Real Property is worth $25,000.00. [ECF No. 138.] But Mosley admitted he did not look at neighboring properties as part of his analysis. He said that even if he had, doing so would "probably not" change his analysis, despite admitting properties "close by" were comparable. [ECF No. 152 at 8:17-

3

10:01.] Mosley also stated he was not aware of the recent sale prices of homes neighboring the subject property. [*Id.* at 10:05-10:39.]

Another concern regarding the limits of Mosley's $25,000.00 value for the Mobile Home is Vanderbilt's decision to only argue for a $20,000.00 value. C*ompare* ECF No. 128 at ¶ 3 (Vanderbilt Supplemental Objection) *with* ECF No. 138 (Mosley Affidavit).  *See also* ECF Nos. 152, 153 (Vanderbilt's counsel confirmed the creditor is asking for the lower value at the August 19 hearing).] The reason for the decision was not explained.

Conflicting appraisal testimony is common in valuation disputes. In such situations, "a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses." *In re Creekside Sr. Apartments*, LP, 477 B.R. 40, 61 (6th Cir. B.A.P. 2012) (quoting *In re Smith*, 267 B.R. 568, 572-573 (Bankr. S.D. Ohio 2001)). This comparison is not difficult if one appraiser is more qualified or credible than the other. It is more difficult when the testimony of both appraisers have significant problems. In such circumstances, a bankruptcy court can form its own opinion of the value if there is enough evidence to support the conclusion. *Id.*

### III.    The Value of the Debtors' Interest in the Real Property is $5,000.00.

#### A.  The Total Value of the Real Property is $10,000.00.

Additional evidence in the record is helpful to determining the value of the Real Property. The Real Property was conveyed for love and affection to "Kimberly Grubbs and her brother" by Deed of Conveyance dated June 24, 2001. [ECF No. 141-1 ("2001 Deed").] A deed in Kentucky must include the fair market value for the property conveyed to facilitate taxation and for recording purposes. *See* K.R.S. § 382.135; *Smith v. Vest*, 265 S.W.3d 246, 252-253 (Ky. Ct. App. 2007). The 2001 Deed set the property value at $1,000.00. [ECF No. 141-1.]

The parties executed a Deed of correction on July 15, 2009, because the grantor did not intend to retain a life estate and to fix an incorrect source clause. [ECF No. 141-2 ("2009 Deed").] The 2009 Deed transfers the property to "Kimberly Sexton, F/K/A Kimberly Grubbs, married". The brother is not listed as a grantee. The 2009 Deed recognized an increase in fair market value to $10,000.00. [*Id*.] The Knott County PVA still uses a $10,000.00 valuation for tax purposes. [ECF No. 140 at ¶ 12; ECF No. 141 at ¶ 12.] The $10,000.00 value is reasonable because it is based on the 2009 Deed and the PVA records. It is also not materially different from Little's $7,500.00 estimated value.

Consideration of the schedules filed also provides some support. The Debtors initially scheduled the Real Property and the Mobile Home with a collective value of $44,500.00 [ECF No. 1.] A $10,000.00 value would mean the Debtors value the Mobile Home at $34,500.00. The Mobile Home was purchased new for $56,741.80, so a depreciated value of $34,500.00 over 16 years is not unreasonable. [*See* Proof of Claim No. 12-1.] Further, the Debtors amended Schedule A on February 7, 2025, to lower the value for the Real Property to $8,000 after discovering the mis-perfected lien on the Mobile Home. [ECF No. 111; *see also* ECF Nos. 108 (Trustee's Report indicating the mis-perfected lien); 109 (Debtors' chapter 13 plan providing for mis-perfected lien).] This amount is also not far from the $10,000.00 value assigned by the PVA and recorded in the 2009 Deed.

Kimberly testified that the value is even less than the value assigned by her expert because the property is located on a hill. [ECF No. 141 at ¶ 14.] In fact, the Debtors amended their schedules a third time to show the Real Property has a value of $3,500.00 of which Kimberly Sexton has a half interest, or $1,750.00. [ECF No. 137.] Vanderbilt objected to the lower valuation. [ECF No. 142.] Kimberly's opinion on the lower value is not given weight

5

because she contradicts the testimony of her own expert, she did not show how she is qualified to make this assessment, and the location of the property on a hill has not changed since she obtained title.

A $10,000.00 value is a reasonable value for the Real Property before considering the half interest owned by Sexton's brother.

### B. The Value of Kimberly's Interest in the Real Property for Confirmation Purposes is $5,000.00.

The Debtors want to divide the value of the Real Property in half because Kimberly shares equal ownership with her brother. [ECF No. 141.] Vanderbilt disagrees and argues that Kimberly has a 100% ownership interest in the property. [ECF No. 142.]

The 2001 Deed conveyed the Real Property to "Kimberly Grubbs, and her brother". [ECF No. 141-1.] The brother is not identified by name, and he did not sign the deed.

Kentucky law at the time the 2001 Deed was executed did not require the parties' specific names if they are otherwise identifiable from the terms of the deed. *See* K.R.S. § 382.135(1) (version of statute effective from July 14, 1992 to July 19, 2005, does not require a deed to include the name of grantor or grantee to record the deed); *Stephens v. Perkins*, 273 S.W. 545, 547 (Ky. 1925) (a deed does not have to include the names of the parties if the intent is ascertainable from the terms of the deed). Even if the statute required the full name of the parties to the deed,[1] the requirement could only affect the recordability of the deed. *See Smith*, 265 S.W.3d at 250. The statute does not change the fundamental elements necessary to determine the validity of the deed, which are (1) a grantor and grantee; (2) delivery and acceptance; and (3) divesting of title by grantor and vesting of title in the grantee. *Id.* The 2001 Deed meets all the

---

[1] In 2016, the Kentucky legislature amended K.R.S. § 382.135 to require the full name of the grantor and grantee for recordation of a deed. K.R.S. § 382.135(1)(a).

requirements for a valid deed and the missing name and signature does not invalidate the transfer.

Vanderbilt argues that the habendum clause refers only to Kimberly's heirs and assigns by referring "her heirs and assigns" as opposed to "their heirs and assigns". But Kimberly testified without objection that she only has one brother, who is alive and easily identifiable. She also testified without objection that her mother intended to convey the property equally to her and her brother. The terms of the 2001 Deed and the weight of evidence indicate the Real Property was conveyed to Kimberly and her brother.

The omission of the brother from the 2009 Deed of correction does not alter the clear intent expressed in the 2001 Deed. *Bentley v. Maggard*, No. 2011-CA-001961-MR and No. 2011-CA-002091-MR, 2013 Ky. App. Unpub. LEXIS 663, at *17-19 (Ky. Ct. App. Aug. 9, 2013) (court would not consider a deed of correction where the parties' intent is clear from the terms of the original deed). Further, the 2009 Deed does not reflect an intent to remove the brother as a grantee. Rather, it provides that the only intended changes are to the conveyance of the life estate, which grantor Debbie Shepherd "did not intend to retain", and correction of an "incorrect source clause". [ECF No. 141-2.]

The evidence shows that Kimberly only owns half of the Real Property, so the Debtors may use one half the Real Property value, $5,000.00, for their plan.

**IV.    A Fair Value for the Mobile Home is $18,000.00.**

Kimberly purchased the Mobile Home for $56,741.80. [ECF No. 141 (Kimberly testified that she financed the Mobile Home for $58,382.80 including the total pre-tax price, all new appliances, and set up); Proof of Claim No. 12-1 (loan documents reflect a purchase price of $56,741.80).] The Debtors did not initially schedule the Mobile Home apart from the Real

7

Estate but amended their schedules to list the Mobile Home separately with a value of $15,000.00. [ECF Nos. 1, 137.] The Debtors' appraiser concludes that the value of the Mobile Home is $16,000.00. [ECF No. 139.] This discrepancy was not explained.[2]

The Debtors testified that the Mobile Home has a PVA value of $25,000.00 but is worth significantly less because its value has depreciated over time and is in poor condition. [ECF Nos. 140, 141.] The Debtors described water damage in the bathroom ceiling, cracks in the dining room wall, and damage to the flooring requiring costly repairs before marketing the property. [*Id*.] Pictures of the Mobile Home confirm significant damage. [ECF No. 141-7.]

Vanderbilt's appraiser Mosley counters that the Mobile Home has a value of $67,857.00. [ECF No. 138.] This high calculation is suspect. Mosley's valuation is $10,000.00 more than the purchase price of the Mobile Home even though the property is 16 years old. He explained the increase is based on improvements to the Mobile Home, but he provided no information to show those improvements are sufficient to offset 16 years of wear and tear. Mosley also admitted there is significant damage to the roof and flooring which would also result in a lower value than the purchase price.

Little's opinion that the Mobile Home is worth $16,000.00 is closer to a reasonable value than Mosley's conclusion that it is worth more than its purchase price in 2009. The best and fairest result is to value the Mobile Home at $18,000.00, halfway between the Debtors' appraisal and Vanderbilt's proposed value. This is a minimal difference and a reasonable way to bridge the gap caused by the problematic testimony.

---

[2] Both parties proposed different values than their appraisers. As Alice might say, "Curiouser and curiouser."

### V. Conclusion.

Based on the foregoing, it is ORDERED that the value of the Debtor Kimberly Sexton's interest in Real Property is $5,000.00 and the value of the Mobile Home is $18,000.00. The Debtors shall have 14 days from the date of this order to amend their plan and schedules consistent with these findings or the case will be subject to dismissal.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, September 5, 2025**
**(grs)**